```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF HAWAII

Lacey Lee Wheeler,              )    Civ. No. 19-00067 SOM/KJM
                                )
        Plaintiff               )    ORDER DENYING MOTION FOR
                                )    SUMMARY JUDGMENT
vs.                             )
                                )
Maui Dept. of Public Safety;    )
Jared Tajon; Harly Dela Cruz;   )
Curt Tokunaga; and Travis       )
Kamaka,                         )
                                )
        Defendants              )
                                )
```

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

In what remains of the First Amended Complaint, Plaintiff Lacey Lee Wheeler, a former inmate at the Maui Community Correctional Facility, seeks damages from Defendant prison guards in their individual capacities for alleged use of excessive force. Defendants seek summary judgment, arguing that Wheeler did not timely and completely exercise her prison administrative remedies. Because this court cannot determine what actually happened based on the record before this court, Defendants' motion for summary judgment is denied without prejudice to the filing of another motion based on a clearer record (provided, of course, that such a motion is timely).

**II.     SUMMARY JUDGMENT STANDARD.**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The movants must support their position concerning whether a material fact is genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468

(9th Cir. 1987) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).  *Accord Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 631.  Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  *Id.*  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  *Id.*

**III.     PROCEDURAL BACKGROUND.**

On February 6, 2019, Wheeler filed the original Complaint in this case.  On April 10, 2019, this court screened the Complaint, determining that it failed to state a colorable claim against the Maui Department of Public Safety or the correction officers in their official capacities.  The screening order gave Wheeler leave to file an Amended Complaint against Defendants Jared Tajon, Harly Dela Cruz, Curt Tokunaga, and Travis Kamaka in their individual capacities.

4

On May 6, 2019, Wheeler filed an Amended Complaint, alleging that, on March 15, 2017, Tajon, Dela Cruz, Tokunaga, and Kamaka put her in "max security" and assaulted her. She also complained of cruel and unusual treatment and of being improperly charged for prison damage. *See* ECF No. 8.

On June 4, 2019, the court dismissed part of the First Amended Complaint, leaving for further adjudication only Wheeler's excessive force claim against the individuals in their individual capacities. *See* ECF No.9.

## IV.     FACTUAL BACKGROUND.

The Department of Public Safety for the State of Hawaii has a grievance procedure. *See* ECF No. 27-2. The procedure has three levels: "The first level of review for the Inmate Grievance is the Section Supervisor, the next level for appeal is the Warden/Branch/Core Program Administrator and the final review level is the Division Administrator (DA). The decision of the DA shall be final and the ultimate recourse in the Administrative Remedy Process." *Id.*, PageID # 152, ¶ 8.3.d.

Under the procedure, an inmate is required to file a grievance within "fourteen (14) calendar days from the date on which the basis of the complaint/grievance occurred." *Id.*, PageID # 150, ¶ 8.1. Once an inmate files a grievance, the prison is required to respond within "twenty (20) working days." *Id.*, PageID # 153, ¶ 10.1. The procedure provides, "If the

inmate does not receive a response within the time allotted by this policy for a reply, including extensions, the inmate may consider the absence of a response as a denial at that level. The result is that the inmate is free to proceed to the next step and no response will be forthcoming to the unanswered step/appeal." *Id.*, PageID # 154, ¶ 10.4.

When an inmate is not satisfied with the response or lack of response to a grievance at the first level, he or she "may submit an Appeal to the next step within five (5) calendar days from the date of receipt." *Id.*, PageID # 152, ¶ 8.3.d; *see also id.*, PageID # 154, ¶ 10.5 ("Inmates have five (5) calendar days to file an appeal to the Warden/Branch/Core Program Administrator upon their receipt of a denial from a Section Supervisor."). The Warden/Branch/Core Program Administrator then has 20 days to respond to the appeal. *Id.*, PageID # 154, ¶ 10.5.

When an inmate is dissatisfied with the response to the appeal at the second level, the inmate has "five (5) calendar days to file an appeal to the Division Administrator (DA)," who then has 20 working days to respond. *Id.*, PageID # 154, ¶ 10.6. "Appeals to the DA shall be the final and ultimate recourse in the Administrative Remedy Process. If the twenty (20) working days has lapsed without a response, including any extension period, the grievance/appeal process will be considered exhausted." *Id.*, PageID # 154, ¶ 10.7.

6

Shelley D. Harrington, an intake service center administrator with the Department of Public Safety, says she has access to all grievances filed by inmates at the Maui Community Correctional Facility. *See* ECF No. 27-1, PageID # 145-46, ¶ 10. Harrington represents:

> 11. On May 19, 2017 Lacey Lee Wheeler filed grievance 394321 alleging physical abuse by Adult Correction Officers Tajon, Dela Cruz, Tokunaga, and Kamaka in an incident which occurred at MCCC on March 15, 2017.
>
> 12. Grievance 394321 was denied as untimely because it was not filed within fourteen (14) calendar days of Ma[r]ch 15, 2017.
>
> 13. Lacey Lee Walker [sic] did not file a third step grievance related to the March 15, 2017 alleged use of force.

*Id.*, ¶ ¶ 11-12. It is not clear from the record that Grievance 394321 was Wheeler's sole grievance with respect to the incident on March 15, 2017. Wheeler appears to file many grievances. In fact, Wheeler indicates that, in 2017, she filed 19 grievances. *See* ECF No. 34, PageID # 189 ("FACT thier [sic] is 19 . . . grievances in year 2017 and more in 2018.").

With respect to the incident on March 15, 2017, Wheeler says that she submitted a grievance that was lost and that her grievance is "on the log." ECF No. 8, PageID # 65. She additionally says that she turned in 4 "step three" grievances and "2 Appeals and countless rejected." ECF No. 35, PageID

7

# 196. This court has attempted to discern from the record what grievances are relevant to Wheeler's excessive force claim.

The record indicates that Wheeler turned in at least two "step 1" grievances in March 2017. In Grievance 392118, signed March 16, 2017, but noted as received on March 30, 2017, Wheeler complains that female inmates hit on her. *See* ECF No. 32-2. The "COS" at the prison responded on March 31, 2017. That response appears unrelated Wheeler's excessive force claim. *Id.*

In Grievance 392119, signed March 16, 2017, but noted as received on March 30, 2017, Wheeler complains of "being bullied by DR#3 I've been hit on, threatened, and they continue to gossip even more." *See* ECF No. 32-3. The "COS" at the prison responded on March 31, 2017. That response is also unrelated to Wheeler's excessive force claim. *Id.* The court notes that this grievance has handwriting indicating, "Staff took me down," but it is unclear when this statement was written. At the hearing on the motion, counsel for Defendants indicated that Wheeler's copies of the grievances were submitted rather than Defendants' copies, meaning that it is possible that the "Staff took me down" language was not part of the original grievance submitted to the prison.

Harrington says, "On May 19, 2017 Lacey Lee Wheeler filed grievance 394321 alleging physical abuse by Adult

8

Correction Officers Tajon, Dela Cruz, Tokunaga, and Kamaka." It is not clear that Grievance 394321 is a "step 1" grievance. The document itself indicates that it is a "step 2" grievance. *See* ECF No. 32-4, PageID # 181. Warden James Hirano responded on June 2, 2017, suggesting that the document was indeed a "step 2" grievance, as a warden is a "step 2" decision maker. *See* ECF No. 32-4, PageID # 182; *see also* Dep't of Pub. Safety Grievance Procedure ¶¶ 8.3.d and 10.5, ECF No. 27-2 (indicating appeals go to the "Warden/Branch/Core Program Administrator"). If Grievance 394321 is "step 2" grievance, when did Wheeler file the underlying "step 1" grievance with respect to her excessive force claim? Wheeler says she submitted three grievances, numbers 392110, 392196, and 392158 on April 9, 2017, ECF No. 35, PageID # 196. Copies of these grievances are not part of the record. Wheeler says she filed Grievance 394321 in May 2017 because her earlier grievances elicited no response. *See* ECF No. 35, PageID # 196.

Notwithstanding Wheeler's statement that she filed three grievances on April 9, 2017, this court cannot tell whether that is accurate. Wheeler is pro se and may be mistaken. This court does not here construe Wheeler's statement about the date as a judicial admission. Because copies of the unanswered grievances are not part of the record, this court cannot tell the date on which they were actually submitted. Additionally, the

9

court is uncertain whether the "step 2" grievance determination as to Grievance 394321 might be flowing from a lack of response by the prison to Grievance 392119, on which there is handwriting stating, "Staff took me down."

There is also handwriting on the warden's response stating, "Since I was housed on a whole []other Island I had to wait for grievant response[]s per Ombudsmen[] agent Jansin Lee also Sgt Owens. I did appeal got rejected." ECF No. 32-4, PageID # 181. Again, however, it is unclear when this writing was added.

**V.      ANALYSIS.**

On November 7, 2019, Defendants moved for summary judgment, arguing that Wheeler had failed to exhaust her administrative remedies before filing the present action, as required by the Prison Litigation Reform Act of 1995 ("PLRA") . *See* ECF No. 26.

The PLRA mandates that inmates exhaust available administrative remedies before bringing suit. 42 U.S.C. § 1997e(a). Specifically, § 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has noted that this provision sets forth a

10

mandatory procedure for obtaining available remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). An inmate must avail himself or herself of all steps of the administrative appeals process to exhaust. *See Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005) ("Completion of the form, followed by Butler taking all the steps of the administrative appeals process, achieved the purposes of the PLRA's exhaustion requirement").

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id.* at 524. *Porter* clarifies that the PLRA applies to claims arising out of isolated incidents of assault, as well as widespread or systematic beatings. *Id.* at 531.

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

11

Failure to exhaust administrative remedies for purposes of the PLRA is an affirmative defense that Defendants have the burden of proving. *Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

In support of the motion for summary judgment, Defendants submitted only evidence of the grievance procedure and a Declaration of Shelley D. Harrington, an intake service center administrator with the Department of Public Safety. Harrington states that she has access to all grievances filed by inmates at the Maui Community Correctional Facility. *See* ECF No. 27-1, PageID # 145-46, ¶ 10, and, as noted earlier, said:

> 11. On May 19, 2017 Lacey Lee Wheeler filed grievance 394321 alleging physical abuse by Adult Correction Officers Tajon, Dela Cruz, Tokunaga, and Kamaka in an incident which occurred at MCCC on March 15, 2017.
>
> 12. Grievance 394321 was denied as untimely because it was not filed within fourteen (14) calendar days of Ma[r]ch 15, 2017.
>
> 13. Lacey Lee Walker [sic] did not file a third step grievance related to the March 15, 2017 alleged use of force.

*Id.*, ¶ ¶ 11-12.

While Harrington appears to be saying that Wheeler did not exhaust the prison administrative remedies as required by the PLRA, that is not clear from the record. Defendants have

12

provided little illumination with respect to the various grievances filed by Wheeler. Rather than examining their own records, counsel for Defendants provides this court with copies of grievances received in the discovery process from Wheeler. *See* Decl. of Kathy K. Higham ¶ 3, ECF No. 32-1, PageID # 177. No explanation is given as to why Defendants did not submit copies of the grievances that were actually submitted by Wheeler. Rather than providing the court with a log of grievances submitted, Defendants simply submit Harrington's declaration, which is potentially missing pertinent information.

Defendants' Supplemental Concise Statement of Facts says that "Wheeler filed grievance 392118 on March 16, 2017." *See* ECF No. 32, PageID # 175. The box for a "step 1" grievance was checked. *Id.* While the grievance was purportedly signed by Wheeler on March 16, 2017, it has a stamp on it that indicates that it was received on March 30, 2017. *See* ECF No. 32-2, PageID # 179. The grievance complains that other inmates were hitting on Wheeler. *Id.* On March 31, 2017, Deborah Taylor acknowledged receipt of this grievance. Grievance 392118 does not pertain to the excessive force claim and its filing does not exhaust prison administrative remedies with respect to that claim.

Defendants' Supplemental Concise Statement of Facts also says that "Wheeler filed grievance 392119 on March 16, 2017." *See* ECF No. 32, PageID # 175. Again, the box for a

13

"step 1" grievance" was checked. While the grievance was also purportedly signed by Wheeler on March 16, 2017, it also has a stamp on it that indicates that it was received on March 30, 2017. *See* ECF No. 32-3, PageID # 180. This grievance complains about bullying by other inmates, but also has a handwritten notation in what appears to be a different pen stating, "Staff took me down." *Id.* On March 31, 2017, Deborah Taylor responded that Wheeler had not identified any staff member that she attempted to discuss this with, and that Wheeler was in segregation pending investigation. *Id.* While the bulk of Grievance 392119 does not pertain to the claims at issue in the present Complaint, its reference to "Staff took me down" might be relevant here. This court is not here ruling that the "Staff took me down" language relates to Wheeler's exhaustion of administrative remedies. This court is here only recognizing the possibility that this might be part of a timely filed "step 1" grievance with respect to the excessive force claim. It also may be that the "Staff took me down" language was not on the document submitted to the prison.

Defendants' Supplemental Concise Statement of Facts also says that "Wheeler filed grievance 394321 on May 19, 2017." *See* ECF No. 32, PageID # 175. Although the box for a "step 2" grievance was checked, the check mark is different from that of the other grievances, being backwards and circled. *See* ECF No.

14

32-3, PageID # 181. This grievance mentions numbers 392118 and 392119. It says, "I lacked info so I put on request and gave proper to complete grievances on 4/5/17 when I got paper back." *Id.* It says, "I was physically abused by Tahon, Dela Cruz, Tokunaga, and Kamaka." *Id.* The warden, James Hirano, responded on June 2, 2017 that "you failed to file your grievance within fourteen (14) calendar days from the date on which the basis of the complaint/grievance occurred." *Id.*, PageID # 182. The warden's response indicates that the prison treated Grievance 394321 as an appeal to the warden. If it was an appeal, then there must have been an underlying grievance that may not have been submitted to the court. Wheeler identifies three such possible grievances, numbers 392110, 392196, and 392158, saying she submitted them on April 9, 2017, ECF No. 35, PageID # 196. While Defendants say that any such grievance would be untimely because filed more than 15 days after the March 15, 2017, incident, Wheeler's somewhat confusing submissions to the court suggest to this court that Wheeler may be unclear about the chronology. Defendants themselves have been mistaken about dates. *See,* e.g.*,* ECF No. 36, PageID # 210 (referring to May 15, 2017, rather than March 15, 2017).

Nor can this court determine whether any untimeliness might have been caused by Defendants. Wheeler suggests that prison officials instructed her to wait before proceeding. ECF

15

No. 32-4, PageID # 181 ("Since I was housed on a whole []other Island I had to wait for grievant response[]s per Ombudsmen[] agent Jansin Lee also Sgt Owens. I did appeal got rejected.").

Harrington appears to be claiming that Wheeler did not file a "step 3" grievance with respect to the March 2017 incident. *See* ECF No. 27-1, ¶¶ 11-12, PageID # 145-46 ("Lacey Lee Walker [sic] did not file a third step grievance related to the March 15, 2017 alleged use of force."). However, Wheeler claims that she turned in 4 "step 3" grievances and "2 Appeals and countless rejected." ECF No. 35, PageID # 196. While it is not clear that any of these alleged "step 3" grievances pertained to the excessive force claim, the record is simply not clear as to whether Wheeler exhausted administrative remedies with respect to the incident of March 15, 2017.

Defendants have thus far failed to demonstrate that they are entitled to summary judgment on the ground that Wheeler failed to timely exercise her administrative remedies. The court denies Defendants' motion without prejudice to the filing of another motion based on a different record. The court extends the Rule 16 deadline for such a motion raising the issue of failure to exhaust prison remedies to March 2, 2020.

16

**VI. CONCLUSION.**

The court denies Defendants' motion for summary judgment with respect to failure to exhaust prison administrative remedies.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 5, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Wheeler v. Maui Dep't of Public Safety*, Civ No. 19-00067 SOM/KJM, ORDER DENYING MOTION FOR SUMMARY JUDGMENT