IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LACEY LEE WHEELER, | ) | Civ. No. 19-00067 SOM/KJM |
| | ) | |
| Plaintiff | ) | ORDER DENYING MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| vs. | ) | |
| | ) | |
| MAUI DEPT. OF PUBLIC SAFETY; | ) | |
| JARED TAJON; HARLY DELA CRUZ; | ) | |
| CURT TOKUNAKA; and TRAVIS | ) | |
| KAMAKA, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

**I.       INTRODUCTION.**

In the remaining claim of the First Amended Complaint,

Plaintiff Lacey Lee Wheeler, a former inmate at the Maui

Community Correctional Facility ("MCCC"), seeks damages from four

prison guards in their individual capacities for alleged use of

excessive force.  The prison guards earlier sought summary

judgment, arguing that Wheeler's claim was barred because she had

not timely and completely exercised her prison administrative

remedies.  The court denied that motion because it could not

determine what had actually happened.  The prison guards again

seek summary judgment, making the same argument.  Because the

record is still unclear, summary judgment is again denied.

**II.        SUMMARY JUDGMENT STANDARD.**

The court set forth the summary judgment standard in its order of February 5, 2017.  *See* ECF No. 37, PageID #s 214-17. That standard is incorporated by reference.

**III.       PROCEDURAL BACKGROUND.**

In her sole remaining claim, Wheeler alleges that Adult Correction Officers Jared Tajon, Harly Dela Cruz, Curt Tokunaka, and Travis Kamaka assaulted her.[1]  This excessive force claim is asserted against the guards in their individual capacities.  *See* ECF No. 8.

**IV.        FACTUAL BACKGROUND.**

Wheeler's First Amended Complaint was accompanied by a declaration made under penalty of perjury that the factual statements in it were true and correct.  *See* ECF No. 8, PageID # 68.  In that document, she attested that, on March 15, 2017, she was an inmate at MCCC.  She says that, because she was being harassed by other inmates, she tapped on the window of the MCCC day room to get the guards' attention.  Adult Correction Officers Tajon, Dela Cruz, Tokunaka, and Kamaka responded but allegedly could not get into the room because the door was broken.  Wheeler says that Kamaka used brute force to open the door.  Wheeler claims that, upon entering the room, Tokunaka grabbed her and

---

[1]Defendants' Answer indicates that three of the guards were incorrectly named as Jared Tahon, Harley Dela Cruz, and Clyde Tokunaga.  *See* ECF No. 19.

slammed her into a counter, and that all four correction officers
slammed her into tables.  She says that Tajon and Kamaka hogtied
her.  *See id.*, PageID #s 64-65.  *See id.*, PageID # 67.

### A.   Grievance Procedure.

This motion turns on whether Wheeler properly grieved
the alleged assault before filing this action.  This court
therefore examines MCCC's grievance procedure.  The procedure has
three levels:  "The first level of review for the Inmate
Grievance is the Section Supervisor, the next level for appeal is
the Warden/Branch/Core Program Administrator and the final review
level is the Division Administrator (DA).  The decision of the DA
shall be final and the ultimate recourse in the Administrative
Remedy Process."  ECF No. 43-5, PageID # 279, ¶ 8.3.d.

Under the grievance procedure, an inmate must file a
grievance within "fourteen (14) calendar days from the date on
which the basis of the complaint/grievance occurred."  *Id.*,
PageID # 276, ¶ 8.1.  "Grievance" is defined as "[a] written
complaint concerning an inmate's conditions of confinement,
treatment, frustrations and claimed rights' violations."  *Id.*,
PageID # 273, ¶ 3.3.  Inmates filing grievances are supposed to
use Department of Public Safety Form 8215 and "clearly state the
complaint in the space provided on the form."  *Id.*, PageID # 277,
¶ 8.3.  Only one issue may be raised in a grievance, unless

"there are a reasonable number of closely related issues."  *Id.* ¶ 8.3.a.

Inmates may get an extension for submitting a grievance for a "valid reason," including "informal resolution attempts." *Id.* ¶ 8.2.c.  The examples of "valid reasons" given in the prison's written grievance procedure appear to be nonexhaustive, given the use of the word "including."  *Id.*

When an inmate files a grievance, a Facility Inmate Grievance Officer is supposed to document it.  *See id.*, PageID # 274, ¶¶ 4.4, 5.4.  The prison is supposed to keep copies of grievances for a minimum of 3 years following the final response. *Id.*, PageID # 275, ¶ 5.7.  Grievances are also supposed to be entered into the Corrections Information Management System.  *Id.*, ¶ 5.8.

Once an inmate files a grievance, the prison is required to respond within "twenty (20) working days."  *Id.*, PageID # 279, ¶ 10.1.  "If the inmate does not receive a response within the time allotted by this policy for a reply, including extensions, the inmate may consider the absence of a response as a denial at that level.  The result is that the inmate is free to proceed to the next step and no response will be forthcoming to the unanswered step/appeal."  *Id.*, PageID # 280, ¶ 10.4.

When an inmate is not satisfied with the response or lack of response to a grievance at the first level, he or she

"may submit an Appeal to the next step within five (5) calendar days from the date of receipt."  ECF No. 43-5, PageID # 278, ¶ 8.3.d; *see also id.*, PageID # 280, ¶ 10.5 ("Inmates have five (5) calendar days to file an appeal to the Warden/Branch/Core Program Administrator upon their receipt of a denial from a Section Supervisor.").  The Warden/Branch/Core Program Administrator then has 20 days to respond to the appeal.  *Id.*, PageID # 280, ¶ 10.5.

If dissatisfied with the response to the appeal at the second level, the inmate has "five (5) calendar days to file an appeal to the Division Administrator (DA)," who then has 20 working days to respond.  *Id.*, PageID # 280, ¶ 10.6.  "Appeals to the DA shall be the final and ultimate recourse in the Administrative Remedy Process.  If the twenty (20) working days has lapsed without a response, including any extension period, the grievance/appeal process will be considered exhausted."  *Id.*, PageID # 280, ¶ 10.7.

### B.   Grievances 394321 and 394330.

The prison guards focus in their motion on two grievance documents, Grievances 394321 and 394330.

Grievance 394321, submitted by Wheeler and dated May 19, 2017, alleges physical abuse by Defendants Tajon, Dela Cruz, Tokunaka, and Kamaka.  *See* ECF No. 43-2, PageID # 270.  The

document includes the following statement in what appears to be

Wheeler's handwriting:

> I'm writing this grievance against Maui
> Community Correctional Center.  I was charged
> with 6(1), 6(14), 7(19) all to do with
> incident on 3/15/17.  On Watch Commander
> Jared Tahon['s] shift that Lt Abac oversaw,
> I put in grievance 3/16/17 I tryed [sic] to
> explain 3/15 = 392118 on 392119 but I lacked
> info so I put on request and gave paper to
> complete grievances on 4/5/17 when I got
> paper back.  Staff Carvolio, Raphody, Jared,
> Mirkovich and Milighter do not treat inmates
> fair nor do they do just investigations[.]
> [T]he[y] gossip [and] have favoritism which
> turns Inmates against rules and ACO against
> ACO.  Every rule [in] MCCC hand[]book is
> never followed: 1) I was treated unfair[;]
> 2) I was living in unhealthy conditions[;]
> 3) I was threatened by staff [and] called
> names[; and] 4) I was physically abused and
> unsafe.  I signed up since 3/16/17 to contact
> ombudsman never got through at MCCC.  I was
> never explained matters.  Yes, I asked for
> help [from] Sherry from Jahova, Erica from
> medical & burno.  I was physically abused by
> Tahon, [D]ela [C]ruz, Tokunaga, [and] Kamaka.
> I'd like to take matters out of MCCC.  I feel
> my case is not being investigated fairly.
> MCCC staff should be sensitive to matters and
> help inmates stay safe and feel safe not
> create to investigate MCCC staff and expunge
> my charges.

*Id.*

Grievance 394321, although dated May 19, 2017,

indicates that it was received on May 25, 2017, and "logged" on

May 26, 2017.  *Id.*  The same box says the "response" to it was

due on June 28, 2020, but there is no explanation as to how that

date was calculated.  *Id.*  In any event, in filing Grievance

394321, Wheeler checked a space designating it as a "step 3" grievance.  Charles Laux, an Inmate Grievance Specialist for the State of Hawaii's Department of Public Safety, says that he crossed out the mark for "step 3" and treated the document as a "step 2" grievance per Department of Public Safety policy.  *See* Decl. of Charles Laux ¶ 5, ECF No. 43-1, PageID # 266.  According to the grievance procedure, "[t]he initial step assignment is determined by the subject matter of the complaint."  *See* ECF No. 43-5, PageID # 279, ¶ 10.1.  At the hearing on the present motion, counsel for the prison guards said that, when an inmate is disciplined via an "adjustment committee decision," as apparently happened to Wheeler in connection with the incident of March 15, 2017, that is "step 1," so an attempt to mitigate that discipline (which is how the prison interpreted Grievance 394321) is deemed a "step 2" grievance.

A redacted copy of the grievance log from MCCC is attached as ECF No. 62-5.  For some reason, Grievance 394321 is not listed in that grievance log.  At the hearing on the present motion, counsel for the prison guards posited that Grievance 394321 might be on a log for the Women's Community Correctional Center ("WCCC"), which is on Oahu.  No WCCC log is included in the record.

Counsel noted that Grievance 394321 (signed May 19, 2017) indicated that Wheeler was being housed at "Olomana[]

WCCC," with Olomana being a location on Oahu.  *See* ECF No. 43-2, PageID # 270.  Indeed, Wheeler wrote a letter to the Ombudsman dated May 23, 2017, which indicates that she had been transferred to WCCC.  *See* ECF No. 63-4, PageID # 407.  In that letter, Wheeler said she had submitted a grievance about a "physical assault," had identified Tajon, Dela Cruz, Tokunaka, and Kamaka as her assailants, and had received no response.  *Id.*

What is confusing to this court is that a Department of Public Safety letter indicates that Wheeler's interisland transfer from Maui to Oahu occurred on July 27, 2017.  *See* ECF No. 62-8, PageID # 436 (memorandum to Wheeler from "Sgt Owens" of the Department of Public Safety).  At the hearing on the present motion, counsel for Defendants suggested that Wheeler may have been moved back and forth, so there may have been more than one date of transfer to WCCC on Oahu.  This court notes that the MCCC grievance log contains grievances from Wheeler dated July 20, October 5, and October 17, 2017.  *See* ECF No. 62-5, PageID #s 423, 427.  At this point, the record is entirely unclear about when Wheeler was on Maui and when she was on Oahu, and about whether there were multiple transfers that affected her ability to file grievances within allotted timeframes.  Wheeler says she kept track of her grievances in a journal, but that that was lost when she was transferred to WCCC.  *See* Decl. of Lacey Lee Wheeler ¶ 2, ECF No. 63-2, PageID #s 405.  The court would be aided by

clear information about Wheeler's locations, information that is presumably available to defense counsel.

On June 2, 2017, Warden James Hirano denied Grievance 394321 as untimely, noting that it had not been submitted within 14 calendar days of the alleged assault on March 15, 2017.  *See* ECF No. 43-3, PageID # 271.  The record does not include an indication of when Wheeler received this decision.

On August 9, 2017, Wheeler appealed the denial of Grievance 394321 through a document labeled as Grievance 394330. Grievance 394330 states that it is an appeal of Grievance 394321. Grievance 394330 contains, in what is presumably Wheeler's handwriting, states:

> I'd like to grieve my 6(1) which was
> [consensual] kiss.  Kendra wrapped her legs
> but first pulled me on top of her[.]  [W]e
> kissed[.  T]hen I noticed a hickey that was
> most likely from Kalola K— who was her
> roommate right before I went in the room.  I
> told her No to sex I have a girlfriend.
> Kendra was upset and jealous and afraid.
> This punishment is way over[board].  I did
> not break the dayroom door ACO Kamaka did[.]
> I never touch the door knob!  Or any mech
> [illegible].  I ask for Help & AIR. [T]here
> was no AC And Lucifer H- was coming at me.
> [S]he was my roomie[.]  I had no where to go.
> May I get an extension & A[n] investigation
> Redone?  A lesser charge!

*See* ECF No. 43-4, PageID # 272 (copy of Grievance 394330).

Wheeler's statement in Grievance 394330 does not include the word "assault."  It mentions that Kamaka broke the dayroom door.  She says that her punishment was too harsh and

asks for the investigation to be redone.  *See id.*  Grievance

394330, like Grievance 394321, is not listed in the MCCC

grievance log.  *See* ECF No. 62-5.

Laux, the Inmate Grievance Specialist, describes

Grievances 394321 and 394330 as follows:

> 17.  On May 19, 2017 Lacey Lee Wheeler filed
>      grievance #394321 alleging physical
>      abuse by Tajon, Dela Cruz, Tokunaga
>      [sic], and Kamaka in an incident which
>      occurred at MCCC on March 15, 2017.
>
> 18.  Grievance 394321 was denied as untimely
>      because it was not filed within fourteen
>      (14) calendar days of March 15, 2017.
>
> 19.  Lacey Lee Wheeler then appealed
>      grievance #394321 as grievance 394330
>      (third step) but dropped allegations of
>      excessive force by Tajon, Dela Cruz,
>      Tokunaga [sic], and Kamaka in this
>      appeal.  Grievance #394330 was denied on
>      September 21, 2017 and acknowledged by
>      Lacey Lee Walker [sic] on September 5,
>      2017.

Decl. of Charles Laux ¶ 5, ECF No. 43-1, ¶¶ 17-19, ECF No. 43-1,

PageID # 268.

Although Laux reads Grievance 394330 as having "dropped

allegations of excessive force," that is not necessarily the only

way to read that document.  Grievance 394330 talks about another

inmate "coming at me," and Wheeler says she "had no where to go."

While this might be a statement going to Wheeler's inability to

escape from the other inmate, it might also speak to Wheeler's

vulnerability to the prison guards' actions.  Even if Grievance

394330 speaks only to the level of discipline meted out to

Wheeler in connection with the incident of March 15, 2017, and

not to the alleged excessive force on that date, what is

interesting is that the denial of Grievance 394330 does not turn

on untimeliness.  Instead, Grievance 394330 was decided on the

merits of at least the issue of the level of discipline:

> You were afforded an opportunity to respond
> to the evidence against you, explain the
> alleged misconduct, and offer additional
> information to support your case.  In
> reviewing your case, while you acknowledge
> that the act was consensual, the victim did
> not . . . .  A PREA review was completed and
> substantiated.  Your misconduct stands.  Your
> grievance is denied.

*Id.*

There is no indication in the record as to why, if

timeliness was not an issue as to the level of discipline

addressed in Grievance 394330, timeliness was an issue in the

denial of the assault allegations in Grievance 394321.  Nor does

the record indicate whether inmates were accustomed to waivers by

prison officials of deadlines.

### C.    **Wheeler's Other Grievances**.

To complicate matters further, Grievance 394321 may not

have been Wheeler's sole grievance relating to the incident on

March 15, 2017.  The record with respect to the previous motion

for summary judgement reflected that Wheeler had turned in at

least two "step 1" grievances in March 2017, shortly after the

11

incident.   In Grievance 392118, signed March 16, 2017 (but noted as received on March 30, 2017), Wheeler complained that female inmates had "hit on" her, and she asked to be rehoused.  *See* ECF No. 32-2.   The "COS" at the prison responded on March 31, 2017. That response appears to have been unrelated to Wheeler's excessive force claim.  *Id.*  Wheeler acknowledged receiving the response a few days later, on April 3, 2017.  *Id.*

In Grievance 392119, signed March 16, 2017 (but noted as received on March 30, 2017), Wheeler complained of "being bullied by DR#3 I've been hit on, threatened, and they continue to gossip even more."  *See* ECF No. 32-3.  The "COS" at the prison responded on March 31, 2017.  That response, while generally unrelated to Wheeler's excessive force claim, did note that Wheeler was being housed in segregation "pending investigation." *Id.*  That investigation appears to have been connected to the incident of March 15, 2017.  The record does not indicate what, if any, conclusion an inmate might draw about whether a grievance deadline remained in effect during an investigation.  It is not clear, for example, whether investigations qualified as "informal resolution attempts" that excused failures to file grievances on time or extended deadlines.  Wheeler acknowledged receiving the response a few days later, on April 3, 2017.  *Id.*

The copy of Grievance 392119 in the record is an "Inmate Copy," which states in handwriting, "Staff took me down."

*Id.*  Wheeler says she wrote "Staff took me down" on the document after it was submitted as a grievance.  *See* Decl. of Lacey Lee Wheeler ¶ 4, ECF No. 62-3, PageID # 406.  It is therefore possible that prison staff did not see that language until, in the course of discovery, they received Wheeler's copies of documents.  Defendants provide no explanation as to why they have not submitted MCCC's own copy of the grievance.

On August 7, 2017, Wheeler filed Grievance 394368, complaining that she had turned in Grievances 392110, 3921956,[2] and 392158 on April 9 and 15, 2017, with respect to her "misconducts disposition" but that these grievances had "gone missing."  *See* ECF No. 62-6, PageID # 434.  Grievance 394368 was returned to Wheeler because it failed to attach all of the supporting documents.  *See* ECF No. 62-7, PageID # 435.  It is not clear that Defendants have copies of Grievances 392110, 3921956, and 392158.

## V.        ANALYSIS.

On February 28, 2020, Defendants filed a second motion for summary judgment based on Wheeler's alleged failure to exhaust her administrative remedies before filing the present action, as required by the Prison Litigation Reform Act of 1995 ("PLRA").  *See* ECF No. 26.  This court denied Defendants' earlier

---

[2] The numerals are difficult to read, and "3921956" may not be the correct number, as that number appears to have one more digit than other grievance numbers.

motion for summary judgment, ruling that Defendants had not established what the facts were.  *See* ECF No. 37.  The present motion has the same defect.  While Defendants say their records do not demonstrate that Wheeler exhausted her prison administrative remedies, Defendants fail to establish that they kept good records.  The incoherence remaining in the record prevents this court from concluding that there are no disputed questions of material fact.

The PLRA mandates that inmates exhaust available administrative remedies before bringing suit.  42 U.S.C. § 1997e(a).  Specifically, § 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has noted that this provision sets forth a mandatory procedure for obtaining available remedies.  *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).  An inmate must avail himself or herself of all steps of the administrative appeals process to exhaust.  *See Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005) ("Completion of the form, followed by Butler taking all the steps of the administrative appeals process, achieved the purposes of the PLRA's exhaustion requirement").

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id.* at 524.  *Porter* clarifies that the PLRA applies to claims arising out of isolated incidents of assault, as well as widespread or systematic beatings.  *Id.* at 531.

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Failure to exhaust administrative remedies for purposes of the PLRA is an affirmative defense that Defendants have the burden of proving. *Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

When, as in this case, the prison's grievance procedures do not specify the detail that must be included in a

15

grievance, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

The present motion adds little detail to the record with respect to whether Wheeler exhausted her prison administrative remedies.  Defendants' second motion is based on the Declaration of Inmate Grievance Specialist Charles Laux. Decl. of Charles Laux ¶ 5, ECF No. 43-1, ¶¶ 17-19, ECF No. 43-1, PageID # 268.  Laux's declaration is insufficient to meet Defendants' initial burden on this motion of demonstrating entitlement to judgment as a matter of law.  In the first place, Laux attempts to interpret Grievance 394330 as dropping the assault allegation, but he ignores the background of the decision on Grievance 394321, which rejected the assault allegation as untimely, even though Grievance 394330, the appeal of that decision, was not decided on timeliness grounds.  Nor does Laux acknowledge that Wheeler may have submitted other grievances/appeals concerning the assault.  The court cannot even tell from the record where Wheeler was housed at particular times, or whether complications of transfers between facilities or discipline such as being held in segregation affected her ability to timely grieve.

Having been included in the record with respect to the earlier motion for summary judgment, Grievances 392118 and 392119

16

are before the court.  MCCC responded to Grievance 392119 on

March 31, 2017.  While that response is generally unrelated to

Wheeler's excessive force claim, it does note that Wheeler was

being housed in segregation "pending investigation."  *Id.*  How

difficult it was for Wheeler to meet a grievance deadline while

in segregation is unclear.  Similarly unclear is whether,

assuming for purposes of this motion that the investigation

pertained to the incident of March 15, 2017, that investigation

qualified as an "informal resolution attempt" or as some other

mechanism that might have excused any failure to timely file a

grievance or appeal.  *See* ECF No. 43-5, PageID # 277, ¶ 8.2.c.

Alternatively, because the list of "valid reasons" for excusing a

failure to timely file a grievance is not exhaustive, it may be

that MCCC's actual investigation into the incident may have

excused a failure to grieve or file an appeal while the

investigation was pending.

        This court notes that the grievance procedure states

that its purpose is to provide a formal and constructive process

to address inmate complaints.  *See id.*, PageID # 273, ¶ 1.0.  An

actual investigation into the incident might serve the same

purpose.  Exactly what MCCC was investigating is not clear from

the record.  The response to Grievance 392118 says that Wheeler

was the one under investigation.  *See* ECF No. 32-2.  However, if

investigators were examining the issue of whether Wheeler broke a

door, it is hard to understand how they could have ignored other allegations about the incident.

Because this court lacks information about the scope of the investigation or its results, this court cannot tell what effect, if any, the investigation may have had on grievance deadlines.  In other words, it is not clear that Grievance 394321, dated May 19, 2017, and alleging physical abuse by Tajon, Dela Cruz, Tokunaka, and Kamaka, was untimely.  *See* ECF No. 43-2, PageID # 270.

Nor is this court persuaded by Defendants' argument that Wheeler failed to exhaust her prison administrative remedies when she failed to appeal the Warden's decision of June 2, 2017, within 5 days.  The record does not reflect when Wheeler received notice of the Warden's decision.  The space for "Inmate Acknowledged Response" is blank.  *See* ECF No. 43-2, PageID # 270. The court therefore cannot discern the timeliness of Wheeler's appeal on August 19, 2017.  *See* ECF No. 43-4, PageID # 272.  Nor is it clear whether any delay in appealing the Warden's decision should be excused.

There is also a question of fact with respect to whether Wheeler submitted other grievances relating to the alleged assault.  On May 23, 2017, Wheeler wrote to the State of Hawaii Ombudsman, claiming to have filed grievances concerning the alleged assault, which she says were not responded to.  *See*

ECF No. 62-4, PageID #s 407, 409.  Additionally, on August 7,

2017, Wheeler filed Grievance 394368, complaining that she had

turned in Grievances 392110, 3921956, and 392158 on April 9 and

15, 2017, with respect to her "misconducts disposition" but that

these grievances had "gone missing."  *See* ECF No. 62-6, PageID

# 434.  Wheeler says she lost her journal when she was

transferred from MCCC to WCCC, *see* Decl. of Lacey Lee Wheeler

¶ 2, ECF No. 63-2, PageID # 405, so the dates she cites may or

may not be correct.  The actual dates might be earlier or later.

And the redacted grievance log in the record is of no help on

this issue, as it does not reflect all of the grievances for

which copies are before the court.  The absence of grievance

numbers in the log may support Wheeler's assertion that she did

indeed submit additional grievances that were not logged or were

lost.

> According to the grievance procedure, a Facility Inmate

Grievance Officer is supposed to document all grievances, and

MCCC is supposed to keep copies of grievances for a minimum of 3

years following the final response to a grievant.  Grievances are

also supposed to be entered into the Corrections Information

Management System.  *See id.*, PageID # 274-75, ¶¶ 4.4, 5.4, 5.7,

5.8.  None of this information has been submitted.  If that

information does not exist, it lends further support to Wheeler's

argument that her grievances were lost.

On the current record, Defendants have still not shown that they are entitled to summary judgment on the ground that Wheeler failed to timely exercise her administrative remedies.

**VI.        CONCLUSION.**

The court denies Defendants' motion for summary judgment with respect to failure to exhaust prison administrative remedies.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 6, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Wheeler v. Maui Dep't of Public Safety,* Civ No. 19-00067 SOM/KJM, ORDER DENYING MOTION FOR SUMMARY JUDGMENT